UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARMMAN SINGH,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>Respondent. | CASE NO. 2:26-cv-03512-JNW<br><br>ORDER GRANTING HABEAS PETITION |

## 1. INTRODUCTION

Petitioner Armman Singh, a citizen of India, entered the United States in April 2023, and Border Patrol detained him before releasing him on his own recognizance a few days later. He lived in the community for over three years. Then, on August 28, 2026, Immigration and Customs Enforcement (ICE) detained him without notice or an opportunity to be heard and transferred him to the Northwest Immigration Customs Enforcement Processing Center ("NWIPC"). Singh petitions for a writ of habeas corpus and a permanent injunction. Dkt. No. 1. For the reasons below, the habeas petition and request for an injunction are GRANTED.

## 2. BACKGROUND

In April 2023, Singh entered the United States and encountered Border Patrol. Dkt. No. 5 ¶ 3. On April 24, 2023, Border Patrol took Singh into custody and then released him on his own recognizance. *Id.* ¶ 4. Border Patrol also served Singh with a Notice to Appear ("NTA"), charging him as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place not designated by the Attorney General. *Id.* ¶ 5.

Singh's removal proceedings remain pending, and U.S. Citizenship and Immigration Services approved his Form I-360, Petition for Special Immigrant Juvenile classification. Dkt. No. 1 ¶¶ 25–26. On October 9, 2025, ICE enrolled Singh in its Alternative to Detention Program ("ADP"). Dkt. No. 5 ¶ 7. Respondents allege that Singh violated the ADP conditions by missing between 16 and 18 biometric check-ins. *Id.* ¶ 9.

On August 28, 2026, ICE directed Singh to appear for an in-person reporting appointment. Dkt. No. 1 ¶ 21. When Singh reported as instructed, ICE agents took him into custody. *Id.* ¶¶ 22, 25. That same day, ICE served Singh with a Warrant for Arrest and transferred him to NWIPC. Dkt. No. 5 ¶ 10. Singh alleges, and Respondents don't dispute, that ICE gave him no advance notice that the alleged reporting violations could result in detention and no meaningful opportunity to contest the alleged violation or the need for renewed detention before a neutral decisionmaker. Dkt. No. 1 ¶¶ 23–24.

## 3. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

A plaintiff seeking an injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## 4. DISCUSSION

### 4.1 Revoking Singh's release and re-detaining him must comport with due process, regardless of the detention statue that applies.

The Parties dispute which statute governs Singh's detention. Respondents argue that Singh was re-detained under 8 U.S.C. § 1225(b)(2)(A) as an applicant for admission, and thus, he is subject to mandatory detention. Dkt. No. 4 at 4. The record suggests otherwise. The NTA issued on April 24, 2023, states that Singh is a noncitizen "present in the United States who has not been admitted or paroled," rather than an "arriving alien." Dkt. No. 6-2 at 2. The Warrant for Arrest dated August 28, 2026, cites Sections of 236 and 287 of the Immigration and Nationality Act, 8 U.S.C. § 1226 and § 1357, respectively. It does not cite 8 U.S.C. § 1225(b)(2)(A). Dkt. No. 6-3 at 2.

But "[t]he Court need not reach the question of whether [the petitioner] is detained pursuant to 8 U.S.C. § 1225 or § 1226 because in either case, the statute cannot replace the constitutional requirement of procedural due process." *Singh v. Noem*, No. 2:26-CV-00555-RAJ, 2026 WL 686135, at *2 (W.D. Wash. Mar. 11, 2026).

The Due Process Clause applies to Singh—who was deprived of his liberty when ICE revoked his release and re-detained him—regardless of whether he is subject to detention under § 1225(b)(2) or § 1226(a). The Court therefore turns to Singh's due process claim.

**4.2 Singh's re-detention without notice and a pre-deprivation hearing violates procedural due process.**

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.* All three *Mathews* factors favor Singh.

First, his private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. A person released from immigration custody is deprived of this interest when he is re-detained. *See Carrion Vera v. Mullin*, No. 2:26-CV-01617-DGE, 2026 WL 1649011, at *4 (W.D. Wash. June 8, 2026) (finding a petitioner released on his own recognizance maintained a liberty interest in his release); *Ramirez Tesara v. Wamsley*, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."). Singh lived in the community for over three years. His liberty interest exists even when release is conditional and

must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

Respondents counter that Singh's interest is diminished because his release was conditional and because the liberty interests of citizens and noncitizens "are not coextensive." Dkt. No. 4 at 5–6 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). But the petitioner in Rodriguez Diaz had already "requested and received a bond hearing before an Immigration Judge." 53 F.4th at 1193. Singh received no hearing at all. And while the conditions of his release bear on whether ICE may revoke it, they don't allow ICE to make that call without giving Singh a chance to be heard. His interest deserves substantial weight.

Second, the risk of erroneous deprivation and the value of additional procedures are high. Respondents argue that the risk of error is "minimal" because Singh's "re-detention was based on objective facts. Conditions of [his] release included a reporting requirement, but [he] failed to adhere to them." Dkt. No. 4 at 6. But Singh had no opportunity to be heard as to the alleged violations, and even if every alleged violation occurred, ICE never explained why re-detention was required. As Singh points out, Respondents' own evidence is inconsistent as to the number of alleged violations. Dkt. No. 7 at 9 (citing Dkt. Nos. 5 ¶ 9; 6-1 at 4–5). Without notice, the risk of deprivation is high. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high.")

Third, Respondents' interest in re-detaining Singh without a hearing is low. Nothing prevented ICE from scheduling a hearing before Singh's scheduled check-in. *See Carrion Vera,* 2026 WL 1649011, at *5 ("The Court acknowledges that the government has a strong interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Petitioner with notice and an opportunity to be heard would have impaired this interest.").

All *Mathews* factors favor Singh and support finding that his detention violates procedural due process. It is undisputed that Singh did not receive notice or a hearing before his re-detention. A "post-deprivation hearing cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Accordingly, his detention violates procedural due process.

Release is the proper remedy. Singh asks, in the alternative, for a prompt custody hearing. But the violation here is that ICE took away liberty Singh already had without first giving him process. A hearing now wouldn't undo that injury; release restores the status quo. Respondents remain free to seek Singh's re-detention if they first provide the process the Constitution requires.

**4.3 Respondents must follow the law if they re-detain Singh.**

Having found a due process violation, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay,* 547 U.S. at 391.

Singh suffered irreparable harm through the violation of his constitutional right to due process and unlawful detention. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Singh, as the injunction requires only that Respondents comply with the Constitution before re-detaining him. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause and ignoring the many cases that have found re-detention without notice or an opportunity to be heard is unlawful.

Singh has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained him without process, after more than three years of release. And Respondents maintain here that Singh is subject to mandatory detention and that due process requires no pre-deprivation notice or hearing. Thus, the Court finds Respondents have expressed "an avowed intention to continue the challenged conduct." *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (citation modified).

Accordingly, the Court prohibits Singh's re-detention while his removal proceedings remain pending unless Respondents first provide adequate notice and a meaningful opportunity to be heard at a hearing before a neutral decisionmaker. If urgent circumstances require an immediate arrest, Respondents must provide that hearing promptly afterward.

## 5. CONCLUSION

Accordingly, the Court ORDERS as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. Respondents must RELEASE Singh within TWENTY-FOUR (24) hours of this order, under appropriate conditions of supervision.
3. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Singh has been released from custody and informing the Court of the date and time of his release.
4. While Singh's removal proceedings remain pending, Respondents are ENJOINED from re-detaining him, absent urgent circumstances requiring arrest, without first providing pre-deprivation notice and a meaningful opportunity to be heard before a neutral decision maker.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 23rd day of October, 2026.

Jamal N. Whitehead
United States District Judge